UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA F.,[1] | ) |
| | ) No. 21 CV 4382 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) May 6, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Angela F. seeks supplemental security income ("SSI") based on physical and mental impairments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her disability application. For the following reasons, the Commissioner's decision is affirmed, and Angela's remand request is denied:

**Procedural History**

Angela filed an application for SSI in December 2017 alleging disability beginning on November 20, 2000. (Administrative Record ("A.R.") 155.) At the administrative level, her application was denied initially and upon reconsideration. (Id. at 111-22, 124-36, 155.) Angela, her attorney, and a vocational expert ("VE") participated in a hearing in July 2019, (id. at 83-110, 155), and the presiding Administrative Law Judge ("ALJ") issued a decision later that month denying her

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Angela's first name and last initial in this opinion to protect her privacy to the extent possible.

application, (id. at 155-66). Angela requested review, and the Appeals Council remanded her application, directing the ALJ to obtain additional evidence from the VE because his testimony was excluded from the hearing's recording. (Id. at 22, 171-74.) The Appeals Council also instructed the ALJ to reevaluate the opinions of treating physician Dr. Edwin Hollins. (Id.)

The ALJ held a second hearing in August 2020 at which Angela participated by telephone without an attorney. (Id. at 22, 38-82.) The following month, the ALJ issued a decision again denying her application, (id. at 22-30), and the Appeals Council affirmed, (id. at 1-5), making the ALJ's September 2020 decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Angela, proceeding *pro se*, then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 15).

## Analysis

Angela argues that remand is required because the ALJ: (1) erroneously deemed her mental impairments non-severe and then compounded this error by not accounting for mental limitations in her residual functional capacity ("RFC"); (2) improperly evaluated treating physician Dr. Hollins's opinions; (3) and failed to consider the "whole medical record." (R. 17, Pl.'s Br. at 4-16.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review.'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024). Having considered the parties' arguments and the record, the court concludes that remand is not warranted.

**A.     Mental Functioning**

Angela argues that the ALJ erred at step two by finding her mental impairments of mood and anxiety disorders non-severe, and then again before step four by failing to incorporate limitations from such impairments into her RFC. (R. 21, Pl.'s Br. at 1-2.) "The Step 2 determination is 'a *de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)); *see also* 20 C.F.R.

3

§ 404.1520(c). Nevertheless, any error in characterizing an impairment as "non-severe" is harmless if the ALJ finds at least one severe impairment and considers the aggregate effect of all impairments when formulating the RFC. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When assessing the RFC, the ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

At step two, the ALJ determined that Angela's physical impairments of diabetes, obesity, hypertension, and fibroids were severe, but that her mental impairments of mood and anxiety disorders were not. (A.R. 24.) Angela contends this conclusion was "against the great weigh[t] of the evidence," including the psychological consultative examiner's ("CE") findings that Angela presented at her evaluation with previous diagnoses of bipolar disorder, panic disorder, and depression, a strong family history of bipolar disorder, and "depressed mood and a tearful affect," which are "symptoms consistent with depression and panic disorder." (R. 21, Pl.'s Br. at 1 (citing A.R. 520-23).) Angela further complains that when analyzing her mental functioning under the paragraph B criteria, the ALJ did not consider the CE's findings, Dr. Hollins's opinions, or her own statements. (Id. at 1-2; see also A.R. 24-25.)

4

But the ALJ did consider Angela's testimony and the CE's and Dr. Hollins's findings when evaluating the paragraph B criteria, and she sufficiently explained why she determined Angela is only mildly limited in the four functional areas. (See A.R. 25.) Indeed, the ALJ acknowledged Angela's statements that her depression causes difficulty with "somatic symptoms" and concentration, persistence, and pace ("CPP"), and that she takes Xanax to treat panic attacks, which she says she suffers twice a week. (See, e.g., id. (citing id. at 377-78 (Angela's February 2018 function report noting she has difficulty staying focused)).) However, the ALJ found that examinations—including by Dr. Hollins—show Angela having a stable mood, intact memory, and the ability to manage finances. (Id. (citing id. at 600 (October 2018 examination by Dr. Hassan Aboumerhi noting that Angela had "normal" mood, affect, behavior, judgment, and thought content), 623 (October 2018 examination by Dr. Hollins noting that Angela was "oriented to person," place, and time, "mood/affect were appropriate," judgment was "not impaired," attention span was "normal," and "short term memory [was] intact"), 682 (May 2019 examination Dr. Hollins noting that Angela had "normal" mood, affect, behavior, judgment, and thought content), 695 (May 2019 examination by Dr. Ernest Powell noting that Angela had "normal" mood, affect, and behavior), 704 (recording purpose of visit to Dr. Hollins to complete disability forms and noting that Angela takes medication to manage bipolar disorder but has not seen a psychiatrist since 2013).) And while the CE reported that Angela presented with depressed mood and a tearful affect, the ALJ noted that the CE found on examination that Angela had "normal speech and thought processes, good fund of

5

information, intact memory, the ability to interpret proverbs and calculate serial 7s, and good judgment." (Id. (citing id. at 520-23).) Furthermore, the ALJ explained Angela's daily activities—including her ability to care and cook for her mother, handle medications and money, follow instructions, drive, and even represent herself "effectively" at her administrative hearing—supported mild limitations in all paragraph B categories. (Id.); *see also* 20 C.F.R. § 404.1520a(d)(1) (mild limitations indicate non-severe impairment with no more than "minimal limitation" in ability to perform "basic work activities"). Substantial evidence therefore supports the ALJ's step-two analysis.

When crafting Angela's RFC, the ALJ further considered the effects of Angela's mood and anxiety disorders but declined to include mental limitations. (A.R 24, 26-29.) The ALJ noted Angela's hearing testimony that she takes medication to treat depression and "gets panicky" when going outside. (Id. at 27.) The ALJ also considered the state agency reviewing psychologists' opinions that Angela could perform light work with exertional limitations—and that she had "no more than mild limitations in the 'paragraph B' criteria.'" (Id. at 27-28 (citing id. at 115-16, 129).) The ALJ found the reviewing psychologists' opinions persuasive because they were "consistent with [Angela's] treatment records," which showed "no psychiatric or other mental health treatment since 2017,"[2] "stable" depression, and "normal" mental status examinations. (Id. at 27-29; see also id. at 470 (noting "stable" depression in

---

[2] The ALJ acknowledged Angela's testimony that cost precluded her from seeking mental health treatment but noted that Angela had Medicaid insurance and visited Dr. Hollins, an internal medicine doctor. (A.R. 28-29.)

6

February 2018), 600 (noting "normal" mood, affect, behavior, judgment, and thought content in October 2018), 704 (noting Angela had not seen psychiatrist since 2013).) For these reasons, the court concludes that the ALJ supplied substantial evidence to support her assessment of the severity and impact of Angela's mental impairments.

**B.    Opinion Evidence**

Angela next contends that the ALJ improperly evaluated the opinions of Dr. Hollins, her treating physician. Under the applicable regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how she considered three other factors in her analysis—the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

7

In June 2019 Dr. Hollins submitted opinions on Angela's mental and physical impairments, but the ALJ deemed them "extreme" and "unpersuasive" because they were inconsistent with treatment records and relied on Angela's subjective symptom statements. (A.R. 28 (citing id. at 769-74)). As to inconsistency, while Dr. Hollins opined that Angela must shift positions at will, elevate her legs, take 10-minute breaks every hour, use her upper extremities 10% of the time, miss more than four days of work per month, and avoid even "low stress" jobs, the ALJ cited to records—including Dr. Hollins's records—"consistently" showing normal physical examinations, including "normal strength and range of motion in the upper extremities, normal gait, and well-controlled hypertension and diabetes," (id. (citing id. at 468 (normal physical examination in February 2018), 474 (same in November 2017), 484 (same in October 2017), 509 (same in March 2017), 622 (same in October 2018)), as well as normal mental status examinations, (id. (citing id. at 623 (noting Angela was "oriented to person," place, and time, "mood/affect were appropriate," judgment was "not impaired," "normal attention span," and "short term memory intact" in October 2018), 796 (noting Angela was "oriented to person, place, and time" and normal behavior and thought content in January 2020))). The ALJ appropriately considered a lack of consistency in finding Dr. Hollins's opinions unpersuasive. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.9c(c)(2).

Likewise, the ALJ did not err by discounting Dr. Hollins's opinions that were based on Angela's symptom statements. *See Ghiselli v. Colvin*, 837 F.3d 771, 776-77 (7th Cir. 2016) (finding no error where ALJ discounted medical opinion based on

8

claimant's subjective symptom allegations). When explaining her evaluation of Dr. Hollins's opinions, the ALJ cited to a progress note in which Dr. Hollins set forth a plan for "[c]omplet[ing]" Angela's disability forms, which referred to a "problem list" he asked Angela to create so that he could "identify which problems stop her from working." (A.R. 28 (citing id. at 706).) The ALJ also referenced Angela's testimony in which she acknowledged that Dr. Hollins asked her to identify her limitations. (Id. (citing id. at 98-99).) Because Dr. Hollins parroted Angela's statements in formulating his opinions, the ALJ appropriately discounted them. (Id.) The ALJ more than minimally articulated why she deemed Dr. Hollins's opinions unpersuasive.

Angela nonetheless argues that the ALJ's evaluation of Dr. Hollins's opinions merits remand because the ALJ "speculat[ed]" that the treating physician completed both opinions "on the same day" and that "they likely were done hurriedly." (R. 21, Pl.'s Br. at 2.) But that language appears in the initial 2019 decision, which the Appeals Council vacated, (see A.R. 162), not in the 2020 decision that is before this court, (see id. at 22-30).[3] This argument is therefore without merit.

## C. The Record

Finally, Angela claims that the ALJ erred by failing to consider the "whole medical record." (R. 21, Pl.'s Br. at 1-3; R. 26, Pl.'s Reply.) Angela does not develop

---

[3] Angela also advances other arguments that do not apply here, including that the 2019 hearing transcript did not include the VE's testimony. (R. 21, Pl.'s Br. at 3.) But this issue was resolved on the Appeals Council's remand. (A.R. 171-74.)

this argument and, as a result, it is deemed forfeited.[4] *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). In any event, insofar as Angela argues that the ALJ was required to address every piece of medical evidence or recount the record "in full detail," the Seventh Circuit has rejected such a position. *Warnell*, 97 F.4th at 1053-54 (rejecting mandate requiring ALJs "to type the medical record into a written decision"). Indeed, the Seventh Circuit recently affirmed that the "better course" is to focus on "substance and not form"—and emphasized that ALJs "are subject to only the most minimal of articulation requirements." *Id.* at 1053. Here, the ALJ sufficiently explained "why the medical record led her to deny" Angela's disability claim. *Id.* at 1054. "The law required no more of the ALJ." *Id.*

## Conclusion

For the foregoing reasons, Angela's remand request is denied, and the Commissioner's final decision is affirmed.

ENTER:

*[signature: Young B. Kim]*

**Young B. Kim**
**United States Magistrate Judge**

---

[4] Angela also forfeits perfunctory arguments in her reply brief. (See R. 26, Pl.'s Reply.) By failing to include citations to the medical record or legal authority supporting her arguments, except in a few instances, the court was unable to follow her reasoning. *See Berkowitz*, 927 F.2d at 1384. Her argument that the government's motion was not timely filed, and therefore should be denied, (R. 26, Pl.'s Reply at 8), also lacks merit because the court granted the government an extension of time to file its motion and the government subsequently did so timely.